UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
BETTY BASTIDAS, GREGG ROSS, LAURIE          )
SCHOEMAN, LAUREN CASPAR, and JEREL          )
WALDEN                                       )
                                             )        **COMPLAINT**
                          Plaintiffs,        )
                                             )
          -against-                          )        **ECF CASE**
                                             )
THE CITY OF NEW YORK; POLICE                 )        **05 Civ. 7670**
INSPECTOR JAMES ESSIG; POLICE                )
COMMANDING OFFICER JOHNSON, POLICE           )
OFFICER KEVIN SAM, Shield No. 9403; POLICE)
OFFICER JAMES RUFLE, Shield No. 26119;       )
POLICE OFFICER PEREZ; POLICE OFFICER         )        **JURY TRIAL DEMANDED**
BEATTY; POLICE OFFICER SALVATOR              )
DIMAGGIO, Shield No. 31742; JOHN DOES;       )
RICHARD ROES; HUDSON RIVER PARK              )
TRUST,                                       )
                                             )
                          Defendants.        )
--------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiffs seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the

United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments,

and by the laws and Constitution of the State of New York.  The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

herein.

## VENUE

5.      Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

6.      Plaintiffs GREGG ROSS, LAUREN CASPAR, and JEREL WALDEN filed

timely Notices of Claim with the Comptroller of the City of New York within 90 days of the

incidents complained of herein.  More than 30 days have elapsed since the filing of these Notices

of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiffs BETTY BASTIDAS' and LAURIE SCHOEMAN's applications to file

late Notices of Claim were granted by New York State Supreme Court Justice Alice Schlesinger

(New York County) on August 17, 2005 (Index No. 05/110624).

2

## PARTIES

8.     Plaintiff BETTY BASTIDAS is a citizen of the United States, and at all times relevant herein resided in the state of New York.

9.     Plaintiff GREGG ROSS is a citizen of the United States, and at all times relevant herein resided in the state of New York.

10.    Plaintiff LAURIE SCHOEMAN is a citizen of the United States, and at all times relevant herein resided in the state of New York.

11.    Plaintiff LAUREN CASPAR is a citizen of the United States, and at all times relevant herein resided in the state of New York.

12.    Plaintiff JEREL WALDEN is a citizen of the United States, and at all times relevant herein resided in the state of New York.

13.    Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

14.    Defendants ESSIG, JOHNSON, SAM, RUFLE, PEREZ, BEATTY, DIMAGGIO and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK.  Said individual

3

defendants are and were at all times relevant herein acting under color of state law in the course

and scope of their duties and functions as officers, agents, servants, and employees of defendant

THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority

vested in them by THE CITY OF NEW YORK and the New York City Police Department, and

were otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties.  Defendants ESSIG, JOHNSON, SAM, RUFLE, PEREZ,

BEATTY, DIMAGGIO and JOHN DOES are sued individually and in their official capacity.

15.    Defendants RICHARD ROES are and were at all times relevant herein duly

appointed and acting supervisory officers, servants, employees and agents of THE CITY OF

NEW YORK and/or the New York City Police Department, responsible for the training,

retention, supervision, discipline and control of police officers under their command.  Said

individual defendants are and were at all times relevant herein acting under color of state law in

the course and scope of their duties and functions as supervisory officers, agents, servants, and

employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with

the power and authority vested in them by THE CITY OF NEW YORK and the New York City

Police Department, and were otherwise performing and engaging in conduct incidental to the

performance of their lawful functions in the course of their duties.  Defendants RICHARD

ROES are sued individually and in their official capacity.

16.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York.  Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

4

said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures.  Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC).  Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

17.    Plaintiffs are individuals who were arrested on 16th Street between Union Square East and Irving Place on August 31, 2004.

18.    Plaintiffs were arrested during one of the many mass-arrests conducted by the NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

19.    On the late afternoon of August 31, 2004 a group of people left the South side of Union Square Park and began walking North along Union Square East.  Some of these people were on the sidewalk, and some were in the street.  A number of musicians playing their instruments were walking at the front of the group.

20.    When the group arrived at the intersection with East 16th Street police officers had formed a line across Union Square East, preventing any further movement to the North.  Police

officers directed the group to turn right onto East 16th Street, and the group did so.

21.    On information and belief, when the group reached Irving Place, at the other end of the block, another line of police officers prevented them from continuing forward and leaving the block in that direction.

22.    On information and belief, the intersection with Union Square East was thereafter also sealed by police officers, and many people who attempted to leave the block at the location where the group had entered it were unable to do so.  On information and belief, the vast majority of those who were on the block were not permitted to leave the block at all.

23.    Police officers acted aggressively and violently towards the musicians and others present on the block.

24.    The people on the block were told to move to the sidewalks and told to sit down.

25.    After the people on the block were seated for a long period of time, the police officers handcuffed them.

26.    Police officers thereafter placed them into vehicles for transport to Pier 57.

27.    Plaintiff BETTY BASTIDAS is a professional photojournalist.  On August 31, 2004 she went from Union Square Park to East 16th Street in order to observe what was occurring there and to photograph it.  She was wearing a press pass around her neck.

28.    While photographing the events occurring on the block she, like the other people present on the block, was directed by a police officer to get on the ground.

29.    After a long period of time BETTY BASTIDAS was handcuffed.  On information and belief the police officer who handcuffed her was defendant KEVIN SAM.

29.    BETTY BASTIDAS was thereafter transported in handcuffs to Pier 57.

30.     On the evening of August 31, 2004 plaintiff GREGG ROSS left his job at the library of New School University and went to Union Square Park.

31.     While at Union Square Park he saw the group proceed North on Union Square East.  He wanted to observe what was occurring and walked along with the group on the sidewalk, and onto 16th Street.

32.     GREGG ROSS saw the police officers acting aggressively and violently towards the people present on the block, and heard one of the police officers state, in sum and substance, "you don't fuck with the NYPD - we'll fuck with you."

33.     Like so many others on 16th Street, GREGG ROSS was also arrested and transported in handcuffs to Pier 57.

34.     Plaintiff LAURIE SCHOEMAN was in Union Square Park on the afternoon of August 31, 2004 to peacefully and lawfully exercise her rights to free speech and assembly and to enjoy her day.  When she saw the group proceeding North on Union Square East she went into the Zen Palate restaurant on the corner of Union Square East and East 16th Street and ordered a cup of tea to go.  She exited Zen Palate with her tea and observed the activity on East 16th Street.

35.     Like so many others on 16th Street, she was also arrested and transported in handcuffs to Pier 57.

36.     On information and belief the police officer who handcuffed LAURIE SCHOEMAN was defendant PEREZ.  In response to LAURIE SCHOEMAN's queries as to why she was being arrested, Defendant PEREZ told her, in sum and substance, that he wished that he knew, and that he was only doing what he was told.

37.     On August 31, 2004 plaintiff LAUREN CASPAR was arrested on East 16th Street

while she was on her way to her Aunt's house.

38.     LAUREN CASPAR attempted to exit East 16th Street at both Irving Place and Union Square East, but the police officers present would not let her leave from either end of the block.

39.     LAUREN CASPAR saw the police officers acting aggressively and violently towards the people present on the block

40.     LAUREN CASPAR was told to sit down by the police officers present on East 16th Street.

41.     After sitting for a long period of time, LAUREN CASPAR was handcuffed by her arresting officer, on information and belief defendant BEATTY.

42.     LAUREN CASPAR was brought to Pier 57.

43.     While LAUREN CASPAR was detained at Pier 57, some of the detainees began to chant that they needed medical attention.  Police officers present at Pier 57 began dancing to these chants.

44.     Plaintiff JEREL WALDEN was also wrongfully arrested on East 16th Street without probable cause or individualized suspicion that he had committed any crime.

45.     Plaintiff JEREL WALDEN also witnessed the police officers acting aggressively and violently towards the people present on the block.  Like so many others on 16th Street, JEREL WALDEN was also handcuffed and transported in handcuffs to Pier 57.

46.     Upon information and belief, an order or orders was/were given by higher-ranking NYPD JOHN DOE defendants present at or near the scene of plaintiffs' arrests for the lower-ranking NYPD officers to engage in the mass arrests on 16th Street.

47.    On information and belief, defendants ESSIG and JOHNSON were two of the NYPD Commanding Officers who were exercising command responsibility at East 16th Street.

48.    On information and belief, all those arrested on East 16th Street, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

49.    Pier 57 is a former bus depot located on the Hudson River, and was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

50.    Pier 57 is owned by defendant HRPT.

51.    Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

52.    The conditions at Pier 57 were atrocious.  The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating.  The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein.  There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier.  On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there.  During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

53.    The detainees at Pier 57 were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore

under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 was not equipped with any fingerprinting machines. On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities and the unlawful chilling of the exercise of free speech and association. Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and a screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

54.    After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

55.    On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

56.    During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

57.    Plaintiff BETTY BASTIDAS was issued a Desk Appearance Ticket that was signed by her arresting officer KEVIN SAM, and that instructed her to appear in Criminal Court on October 5, 2004 to answer the charge of disorderly conduct.  When she arrived at the Criminal Court on that date she received a letter from the Office of the District Attorney informing her that on September 2, 2004, which had been the date of her release from police custody, their office had declined to prosecute her.  Plaintiff BETTY BASTIDAS was released after approximately 40 hours in custody.

58.    Plaintiff GREGG ROSS was told that he was going to be taken to see a Judge.  Instead he was simply brought to a door and released, and informed that there would not be any charges issued against him.  He later received a summons in the mail, directing him to report to the Criminal Court on a date that had already passed.  When GREGG ROSS telephoned to inquire about this he was informed that a bench warrant had been issued for his arrest because he had not come to Court.  Defendant RUFLE was the deponent on the complaint filed with the Criminal Court against GREGG ROSS, charging him disorderly conduct and parading without a permit.  All charges against GREGG ROSS have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.  GREGG ROSS was released after approximately 50 hours in custody.

59.    Plaintiff LAURIE SCHOEMAN was released after approximately 40 hours in custody.  On information and belief, she was charged with disorderly conduct and parading without a permit.  All charges against LAURIE SCHOEMAN have been dismissed in their

entirety of by way of an adjournment in contemplation of dismissal.

60.    Plaintiff LAUREN CASPAR was released after approximately 35 hours in custody.  On information and belief, she was charged with disorderly conduct and parading without a permit.  All charges against LAUREN CASPAR have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

61    Plaintiff JEREL WALDEN was released after approximately 44 hours in custody. Defendant DIMAGGIO was the deponent on the complaint filed against him in Criminal Court charging him with disorderly conduct and parading without a permit.  All charges against JEREL WALDEN have been dismissed in their entirety.

62.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

63.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

64.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

65.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

66.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, and by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, defendants ESSIG, JOHNSON, SAM, RUFLE, PEREZ, BEATTY, DIMAGGIO and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of

13

plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

68.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

69.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

71.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

72.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

14

73.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

74.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

75.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly.  The CITY OF NEW YORK during the period of the RNC had de facto policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had de facto policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had de facto policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  These policies, practices, customs, and usages were a direct and proximate cause of the

unconstitutional conduct alleged herein.

76.    At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

77.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**FOURTH CLAIM**

**LIABILITY OF HUDSON RIVER PARK TRUST
FOR CONSTITUTIONAL VIOLATIONS**

78.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

79.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

80.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

81.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

82.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## **FIFTH CLAIM**

**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS**

84.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

85.    The conduct of defendants ESSIG, JOHNSON, SAM, RUFLE, PEREZ, BEATTY, DIMAGGIO, DOES, and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the

17

plaintiffs pursuant to the state common law doctrine of respondeat superior.

86.     The conduct of employees and officials of the HUDSON RIVER PARK TRUST,
alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK
concerning the improper and dangerous use of Pier 57, occurred in and during the course and
scope of their duties and functions as employees and officials of the HUDSON RIVER PARK
TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs
pursuant to the state common law doctrine of respondeat superior.

87.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,
suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,
costs and expenses, and were otherwise damaged and injured.

## SIXTH CLAIM

### ASSAULT AND BATTERY

88.     The plaintiffs incorporate by reference the allegations set forth in all preceding
paragraphs as if fully set forth herein.

89.     By the actions described above, defendants did inflict assault and battery upon
plaintiffs.  The acts and conduct of defendants were the direct and proximate cause of injury and
damage to plaintiffs and violated their statutory and common law rights as guaranteed by the
laws and Constitution of the State of New York.

90.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,
suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,
costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

18

## FALSE ARREST and FALSE IMPRISONMENT

91.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92.     By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

93.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

94.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

96.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

## ABUSE OF PROCESS

97.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98.     By the conduct and actions described above, defendants employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

99.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY

100.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.     By the actions described above, defendants violated the free speech and assembly

20

rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

## VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

103.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.    By the actions described above, defendants violated the right of plaintiffs to equal protection of law. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

105.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TWELFTH CLAIM

## NEGLIGENCE

106.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiffs.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRTEENTH CLAIM

## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

109.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

110.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST negligently hired, screened, retained, supervised and trained the employees and officials who injured plaintiffs.  The acts and conduct of these employees and officials were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

111.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

112.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

113.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

114.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

### PRIMA FACIE TORT

115.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

116.    Defendants, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

## MALICIOUS PROSECUTION

118.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119.    By the actions described above, defendants maliciously prosecuted plaintiffs BETTY BASTIDAS and JEREL WALDEN without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs BETTY BASTIDAS and JEREL WALDEN and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empanelling of a jury to consider the merits of the claims herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:          New York, New York
                August 31, 2005


                                        _____/s/_____
                                        JEFFREY A. ROTHMAN, ESQ.
                                        (JR-0398)
                                        575 Madison Avenue, Suite 1006
                                        New York, New York 10022
                                        (212) 348-9833; (212) 937-8450

                                        JEFFREY E. FOGEL, ESQ.
                                        (JF-3948)
                                        232 Warren Street
                                        Brooklyn, NY 11201
                                        (718) 243-2039

                                        JOHN WARE UPTON, ESQ.
                                        (JU-9065)
                                        70 Lafayette Street
                                        New York, NY 10013
                                        (212) 233-9300

                                        Attorneys for plaintiffs